757 P.2d 1333 (1988)
107 N.M. 341
In the Matter of the Termination of Parental Rights of WAYNE R.N. and Rebecca R.N., with eespect to Mikul R.N. and Wayne R.N., Jr., Children.
STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner-Appellee,
v.
WAYNE R.N. and Rebecca R.N., his wife, Respondents-Appellants.
No. 10212.
Court of Appeals of New Mexico.
June 2, 1988.
*1334 Jennifer A. Salisbury, Gen. Counsel, Susan K. Rehr, Ernest Pacheco, Assistants Gen. Counsel, Human Services Dept., Santa Fe, for petitioner-appellee.
Robert S. Skinner, Raton, for respondents-appellants.
Judy Lewis, Oklahoma Indian Legal Services, Oklahoma City, Okl., Gary Alsup, Clayton, Guardian Ad Litem.
Mary Lou Carson, Indian Pueblo Legal Services, Inc., San Juan Pueblo, for the Cheyenne and Arapaho Tribes of Oklahoma, amicus curiae.

OPINION
MINZNER, Judge.
Respondents appeal from the judgment of the trial court terminating their parental rights. Although in other contexts New Mexico law requires that grounds for termination be proved by clear and convincing evidence, In re Adoption of Doe, 98 N.M. 340, 648 P.2d 798 (Ct.App. 1981), in termination proceedings involving parental rights to a child subject to the Indian Child Welfare Act, the grounds for termination must be proved by evidence beyond a reasonable doubt. See NMSA 1978, § 32-1-54(D) (Repl. 1986) and 25 U.S.C. § 1912(f) (1982). On appeal, respondents contend (1) that the trial court was required to transfer this case to the tribal court of the Cheyenne and Arapaho Tribes of Oklahoma; (2) that the evidence is insufficient to establish that the respondents are not and cannot be adequate parents of their children; and (3) that the Department of Human Services (department) failed to use reasonable efforts to assist them in adjusting the conditions rendering them unable to properly care for the children. § 32-1-54(B)(3). We affirm.
Wayne R.N., the father of the two children involved in this case, is an enrolled member of the Cheyenne and Arapaho Tribes of Oklahoma (the Tribes). Rebecca R.N., his wife and the mother of the two children, is not Indian. They live in Colfax County, New Mexico. One of the children was in the custody of the department when the department petitioned to terminate respondents' rights; the other child was in respondents' custody. Respondents are the parents of two other children, as to whom parental rights were terminated in a prior proceeding. It is undisputed that the children are enrolled or entitled to be enrolled in the Tribes, and thus the Indian Child Welfare Act of 1978 (ICWA) is applicable. See 25 U.S.C. §§ 1901-1963 (1982).
The application for termination of parental rights was filed January 15, 1987. A copy of the application was served on the Tribes by serving Judy Lewis, the attorney for the Tribes. The petition alleged the Tribes were aware of the proceedings and had found an adoptive home for one of the children. On January 26, 1987, the trial court appointed a guardian ad litem for the children and counsel for the parents. The hearing on the merits was held on several days in July and August 1987, due to the court's crowded docket.
*1335 At the beginning of the hearing on the merits, respondents petitioned the court to transfer the case to the tribal court of the Cheyenne and Arapaho Tribes at Concha, Oklahoma. The state's attorney and the guardian ad litem for the children both objected to the transfer. The trial court held a hearing on the issue of whether the case should be transferred.
Lewis testified that she had represented the Tribes in ICWA cases for four years. She stated the Tribes were opposed to a transfer to the tribal court at that point in the proceedings. She noted that the Tribes have a policy against accepting transfers of cases in which the child, the parents, the witnesses, and all the evidence were in another state. In her opinion, if the trial court were to decide to transfer the case to the tribal court, the Tribes would decline jurisdiction. On cross-examination, she indicated that the Tribes had taken no formal action to decline jurisdiction in the case.
Terry Love, the Tribes' social worker, testified she was authorized by the Tribes' business council to act for the Tribes in ICWA cases. She further testified that, in her opinion, if the state trial court granted the petition to transfer, the Tribes would decline jurisdiction.
At the end of the hearing, the trial court declined to transfer the case to the tribal court. The trial court noted on the record that the petition was not timely and that there was no reasonable likelihood the Tribes would accept jurisdiction. In its formal findings and conclusions, the trial court found the Tribes had been notified and had agreed to jurisdiction in the state court.
On appeal, respondents argue that the transfer provision of the Indian Child Welfare Act is mandatory, and, since the Tribes have not taken formal action to decline jurisdiction, it was error for the trial court to refuse to transfer the matter. We disagree.
The Indian Child Welfare Act provides, in pertinent part:
In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
25 U.S.C. § 1911(b) (emphasis added).
Once a petition to transfer a matter to tribal court is filed as contemplated by the Act, the state court must hold a hearing on the petition, and determine whether or not to transfer the matter. In re G.L.O.C., 205 Mt. 352, 668 P.2d 235 (1983); In re M.E.M., 195 Mt. 329, 635 P.2d 1313 (1981). At the hearing, the party opposing transfer has the burden of establishing that good cause not to transfer the matter exists. In re M.E.M. If the state trial court determines the party opposing the transfer has established good cause not to transfer, the state trial court may deny the petition. If, however, the state trial court grants the petition, the tribal court must determine whether to accept or decline jurisdiction.
The determination of whether good cause not to transfer the proceedings exists will necessarily be made on a case-by-case basis, after a careful consideration of all the circumstances of the case. In this case, there are a number of factors that support the trial court's decision not to transfer the case to the tribal courts.
First of all, the request to transfer the proceedings was made by respondents orally on the morning the trial on the merits was to begin and almost six months after they were served in these proceedings. The Department of the Interior has published guidelines containing its interpretation of the ICWA. 44 Fed.Reg. 67584 *1336 (1979) (not codified). Although these guidelines are not binding, id., other courts have found particular provisions persuasive. See In re M.E.M.; In re J.R.H., 358 N.W.2d 311 (Iowa 1984). So do we.
The guidelines note that one of the factors a state trial court should consider is whether the petitioner filed the petition promptly after receiving notice of the hearing. 44 Fed.Reg. at 67591, ¶ C.3(b)(i). In the instant case, respondents filed their petition approximately six months after they had been served and had counsel appointed for them. This factor weighs against transfer of the proceedings.
In addition, the respondents, the children, and apparently all the witnesses who could testify concerning respondents' actions and their effect on the children were all present in New Mexico, while the relevant tribal court was located in Oklahoma. If this case were to be transferred to the tribal court, the witnesses would all be forced to travel to Oklahoma, at considerable expense and difficulty. Moreover, the Tribes' attorney testified that the tribal court's subpoena power was limited, and the tribal court would not be able to subpoena witnesses in New Mexico. Other states have recognized that in these circumstances good cause to deny a transfer to the tribal court may exist. In re J.R.H.; In re Bird Head, 213 Neb. 741, 331 N.W.2d 785 (1983); see also In re Adoption of Baby Boy L., 231 Kan. 199, 643 P.2d 168 (1982) (dicta). These holdings are in line with the position of the Department of the Interior on the interpretation of the Indian Child Welfare Act. See 44 Fed.Reg. at 67591, ¶ C.3(b)(iii).
Similarly, the legislative history states Section 1911(b) was designed to "permit a State court to apply a modified doctrine of forum non conveniens, in appropriate cases, to insure that the rights of the child as an Indian, the Indian parents or custodian, and the tribe are fully protected." H.R.Rep. No. 1386, 95th Cong., 2d Sess., reprinted in 1978 U.S. Code Cong. & Admin. News 7530, 7544. In determining whether the doctrine of forum non conveniens should be invoked, the trial court should consider the practical factors that make trial of a case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process. See State ex rel. Southern Pac. Transp. Co. v. Frost, 102 N.M. 369, 695 P.2d 1318 (1985). In this case, all these factors favor trying the merits in New Mexico.
Finally, the Tribes had representatives present at the hearing who were in a position to protect and advance their interests in the proceedings. The Tribes' attorney stated the Tribes were opposed to the transfer. The Tribes' social worker could and did testify concerning childrearing practices of the Tribes. The presence in New Mexico of these representatives and the assistance they provided to the trial court in this matter minimized the danger that the respondents' rights would be terminated on the basis of conduct that would have been acceptable to the Tribes, or that the Tribes' rights would be overlooked or impaired during the proceedings.
Under these circumstances, there was good cause not to transfer the case to the tribal court of the Cheyenne and Arapaho Tribes of Oklahoma. Respondents argue that the trial court did not make a finding that good cause existed, but rather that the Tribes had agreed to the state court's exercise of jurisdiction over this case. The form of the findings does not control. This court will uphold the judgment of the trial court if it is right for any reason. State v. Beachum, 83 N.M. 526, 494 P.2d 188 (Ct.App. 1972). The factors upon which we have based our decision were undisputed before the trial court. In addition, the trial judge's remarks on the record indicate he had determined that good cause existed not to transfer. An appellate court may look to the remarks or opinions of the trial judge for clarification of ambiguities, as long as such remarks or *1337 opinions are not made the basis for error on appeal. Ledbetter v. Webb, 103 N.M. 597, 711 P.2d 874 (1985). In these circumstances, it would be useless to remand the case for findings of fact by the trial court. Wright v. Brem, 81 N.M. 410, 467 P.2d 736 (Ct.App. 1970) (the function of an appellate court is to correct an erroneous result and not to correct errors which, even if corrected, would not change the result below).
The trial court found, among other things, that both children suffered from deprivation syndrome and that this was causally connected to respondents' behavior. Respondents contend the evidence before the trial court was insufficient to support a finding beyond a reasonable doubt that the conditions and causes of the neglect and abuse were unlikely to change in the foreseeable future. In the alternative, respondents contend the evidence is insufficient to support a finding that the department made reasonable efforts to assist them in adjusting the conditions which render them unable to properly care for the children.
It is for the trial court to weigh the evidence, resolve conflicts in the testimony, and determine where the truth lies. On appeal, this court may not substitute its judgment for that of the trial court. In re Adoption of Doe. Instead, this court views the evidence in the light most favorable to the prevailing party, and determines if the mind of the fact finder could properly have reached an abiding conviction as to the truth of the fact or facts found. Id. Applying that standard, and based on our review of the record, we hold substantial evidence exists to establish beyond a reasonable doubt grounds for terminating the parental rights of respondents. See id.; 25 U.S.C. § 1912(f).
With respect to the likelihood of change, two psychologists, a psychotherapist, a behavioral pediatrician, and all three caseworkers involved with the family unanimously testified that, in their opinion, respondents would not change their childrearing practices in the foreseeable future. Respondents both testified that they saw nothing wrong with their childrearing practices and did not feel any need to change. This evidence is sufficient to support a finding that the conditions and causes of neglect and abuse were unlikely to change. See In re Adoption of Doe; § 32-1-54(B)(3).
The efforts made by the department to remedy the causes of the neglect showed the department's efforts included the assistance of two social workers and a trained homemaker. Respondents' case-worker provided considerable assistance in the form of financial assistance and assistance with transportation. She also counseled them to some extent. The trained homemaker made over thirty-five visits to the home, in an effort to teach respondents minimum standards of homemaking and sanitation. These efforts were made over a three-year period and were augmented by the efforts of other agencies, which provided counseling concerning substance abuse. The trial court's finding that the department made reasonable efforts to assist respondents is also supported by substantial evidence. See In re Termination of Parental Rights of Reuben & Elizabeth O., 104 N.M. 644, 725 P.2d 844 (Ct.App. 1986); In re Adoption of Doe; § 32-1-54(B)(3).
The judgment of the trial court terminating the parental rights of respondents is affirmed.
IT IS SO ORDERED.
BIVINS and ALARID, JJ., concur.